*E-FILED - 5/13/08*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEVEN L. OWENS,<br><br>        Petitioner,<br><br> v.<br><br>A.P. KANE, et al.,<br><br>        Respondent. | No. C 05-1482 RMW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Docket Nos. 28, 31 |

## INTRODUCTION

     Petitioner Steven L. Owens, a California state prisoner who is proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a decision by the California Board of Prison Terms ("Board") that he is unsuitable for parole. The Court issued an order directing respondent to show cause why the cognizable claims should not be granted. Respondent has filed an answer addressing the merits of the petition, and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes that petitioner is not entitled to relief based on the claims presented and will deny the petition.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.05\Owens482.hcruling.md

## BACKGROUND

The charges against petitioner arose from his kidnapping and rape of a woman in 1988. An Alameda County Superior Court jury found petitioner guilty of kidnapping with the intent to commit robbery (Cal. Pen. Code § 209(b)) and rape (Cal. Pen. Code § 261.2).[1] Ans., Ex. 1 (Abstract of Judgment) at 1. The superior court sentenced petitioner to an indeterminate life term for the first count, with an eleven year sentence for the other count to run concurrently. Id.

The facts of the case are as follows. On March 2, 1988, at 1 a.m. in Alameda County, California, the victim, a female, walked to a grocery store. Ans., Ex. 2 (Probation Officer's Report) at 2. Three men in a car, petitioner and co-defendants Taylor and Gort, offered her a ride, an offer she declined. Id. Gort and Taylor chased her and dragged her into the car, and took some of her belongings. Id. Petitioner drove to the Lake Merritt Boathouse. Id. Gort took a walk while petitioner and Taylor undressed and forced the victim to do the same. Id. Both men raped her vaginally and orally. Id. Gort returned to the car and the men drove to East Oakland as petitioner, in the backseat, again raped the victim. Id. The men stopped at a hotel and returned the victim's clothing to her. Id. Joined by another man, purportedly Taylor's brother, the men checked into a room and smoked cocaine and then left the victim in the hotel room. Id. Taylor's brother walked the victim to the hotel office to call her fiancé. Id. The Oakland Police Department obtained a description of the car, which they stopped within an hour of receiving the information. Id.

In November 2003, the Board found petitioner unsuitable for parole because he would pose an unreasonable danger to society if released, citing as its reasons that the offense "was carried out in an especially cruel and callous manner," and appeared to be "calculated" and "dispassionate." Ans., Ex. 3 (Transcript of Nov. 4, 2003 parole hearing) at 55. The Board also cited that fact that the "offense was carried out in a manner that demonstrates an exceptionally callous disregard for another human being," for an "inexplicable" motive, and the fact that petitioner had a history of violent and assaultive behavior. Id.

In response, Petitioner filed state habeas petitions, both later summarily denied, in the

---

[1] California Penal Code section 261.2 is now California Penal Code section 261(a)(2).

California superior and supreme courts. Ans., Exs. 12, 14; Pet., P. & A. at 1. Petitioner filed the instant federal habeas petition in 2005. This court dismissed the petition because it appeared that petitioner did not pay the filing fee. Docket No. 4. The court later reopened the case, vacated the judgment, and directed respondent to show cause why the writ should not be granted. Docket Nos. 8, 9. Respondent filed a motion to dismiss, which this court denied. Docket Nos. 13, 17. Respondent filed an answer and then petitioner filed a traverse. Docket Nos. 26, 27.

As grounds for federal habeas relief, petitioner alleges that the Board's violated petitioner's right to due process because its decision was not supported by "some evidence."[2]

**STANDARD OF REVIEW**

A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. § 2254(d)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. (Terry) Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination

---

[2] As articulated in the petition, petitioner's contentions are nearly incomprehensible. Respondent "is unable to decipher [petitioner's] claims." Ans. at 2. The court will rule on the relevant issues it can identify.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.05\Owens482.hcruling.md        3

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

The state court decision to which 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case the opinion of the California Court of Appeal. See Nunnemaker 501 U.S. at 801-06; Shackleford v. Hubbard, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. Id.

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

## DISCUSSION

Petitioner contends that the Board's decision violates his right to due process because it is not based on "some evidence." Pet., P. & A. at 6-12.

The Board complies with due process provided that there is "some evidence" to support its decision. The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)); see McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002)

1  (same). Additionally, the evidence underlying the Board's decision must have some indicia of

2  reliability. McQuillion, 306 F.3d at 904. Accordingly, if the Board's determination of parole

3  suitability is to satisfy due process, there must be some evidence, with some indicia of reliability,

4  to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion, 306

5  F.3d at 904.

6        In assessing whether there is "some evidence" to support the Board's denial of parole, this

7  Court must consider the regulations that guide the Board in making its parole suitability

8  determinations. The Board is to consider "all relevant, reliable information available." 15 Cal.

9  Code Regs. § 2402(b). "The panel shall first determine whether the life prisoner is suitable for

10 release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable

11 for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of

12 danger to society if released from prison." Id. § 2402(a). The regulations enumerate various

13 circumstances tending to indicate whether or not an inmate is suitable for parole. Id. § 2402(c)-

14 (d).[3]

15       Applying this law to the instant case, petitioner's claim is without merit. The court finds

16 that there was some evidence to support the Board's parole decision, based not only on the

17 circumstances of the commitment offense, but also on other relevant considerations. After a full

18 hearing, the Board concluded that petitioner was not suitable for parole and "would pose an

19 unreasonable risk of danger to society or threat to public safety if released from prison." Ans., Ex.

20 3 at 55. As its reasons for this decision, the Board stated that "the offense was carried out in an

---

3. The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

United States District Court
For the Northern District of California

1   especially cruel and callous manner" which was also "dispassionate" and "calculated." Id. The
2   circumstance of the commitment offense indicate "an exceptionally callous disregard for another
3   human being." Id. "[T]he victim was abused and defiled," having been put through "an ordeal of
4   rape and oral copulation repeatedly." Id. The Board also found that "[t]he motive for the crime is
5   inexplicable." Id.

6       In addition to the nature and circumstances of the commitment offense, the Board
7   considered other parole suitability factors, such as petitioner's criminal history and his behavior in
8   prison. The Board noted that petitioner "had a record of violence [and] assaultive behavior . . . an
9   escalating pattern of criminal conduct." Id. According to the record, petitioner has a lengthy and
10  violent criminal history, which "in summary consists of numerous narcotic related offenses,
11  weapon offenses, auto theft, strong arm robbery, assault to commit mayhem battery [sic], and
12  loitering when children are present." Ans., Ex. 8 (Life Prisoner Evaluation Report, September
13  2003 Parole Consideration Calendar) at 3. Other notable incidents include an assault to commit a
14  specific sex offense, an arrest for locking himself in a women's bathroom stall and looking
15  through a hole in the stall in order to observe women using the bathroom, and charges of
16  absconding and child stealing. Id. Petitioner also has been cited for several infractions while in
17  prison, including possession of dangerous property, conspiracy to commit battery, and possession
18  of inmate- manufactured alcohol. Ans., Ex. 7 (Disciplinary Sheet).

19      Other stated reasons on which the Board based its decision were that petitioner had an
20  unstable social history and that his most recent psychological report stated that he "showed poor
21  insight into his commitment offense" and "his violence potential is estimated to be slightly above
22  that of the average citizen in the community." Ans., Ex. 9 at 2, 3. According to the Board, "[u]ntil
23  enough progress is made, [petitioner] continues to be unpredictable and a threat to others." Ans.,
24  Ex. 3 at 57. Because some evidence exists to support the Board's fining of parole unsuitability,
25  the Board's decision has complied with the requirements of due process, and therefore, petitioner's
26  claim fails.

27      As stated above, petitioner's claims are not clearly articulated. In addition to the central
28  claim just addressed, the petition does raise, however, two ancillary issues the court will address

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.05\Owens482.hcruling.md     6

briefly. First, petitioner contends that the Board violated his right to equal protection by its failure to use California's sentencing matrix to determine a parole date proportional to other similarly situated prisoners. Simply put, the Board, according to the California Supreme Court, is under no such duty after it has determined that a prisoner is unsuitable for parole. In re Dannenberg, 34 Cal. 4th 1069, 1071 (Cal. 2005). "The Legislature has not disturbed the Board's long-standing formal policy that a determination of individual suitability must precede the setting of a "uniform" parole release date."[4] Id. "The BPT acts properly in determining unsuitability, and the inmate receives all constitutional process due, if the Board provides the requisite procedural rights, applies relevant standards, and renders a decision supported by "some evidence." Id.

Likewise, petitioner's federal equal protection claim is without merit. Rather than meting out different treatment to allegedly similarly-situated prisoners, the Board, according to its statutorily assigned duty, looks at prescribed factors and applies these factors in its individualized assessment whether a prisoner is suitable for parole. Title 15 Cal. Code Regs. §§ 2281, 2404. Each case presents an idiosyncratic set of facts. Because the Board makes an individualized assessment of each particular set of facts, petitioner's claim that he is not receiving equal treatment is simply not tenable.

Second, the petition raises the issue that the Board's continued reliance on the circumstances of the commitment offense can, over time, result in a deprivation of petitioner's right to due process. Pet., P. & A. at 8. The Ninth Circuit has reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs v. Terhune, 334 F.3d 910,

---

4. "[W]e conclude that the Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually. While the Board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." In re Dannenberg, 34 Cal. 4th at 1071.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.05\Owens482.hcruling.md          7

1  916-17 (9th Cir. 2003). However, the Ninth Circuit has not set a standard as to when a complete
2  reliance on unchanging circumstances would amount to a due process violation.

3        This court, as detailed above, finds some evidence to support the Board's finding,
4  consonant with due process and the Ninth Circuit's holding in <u>Biggs</u>, that petitioner was unsuitable
5  for parole. While the circumstances of the commitment offense are long past, they provide at this
6  time some evidence to support the Board's decision.

7        Accordingly, the court finds that the state court's determination was not contrary to, or an
8  unreasonable application of, clearly established Supreme Court precedent, nor was it based on an
9  unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. § 2254
10 (d)(1), (2).

## PENDING MOTIONS

12       Petitioner has filed two requests to the court to take judicial notice of various documents.
13 Docket Nos. 28, 31. These documents include judicial decisions from the Santa Clara Superior
14 Court involving prisoners other than petitioner and letters from one of these other prisoners to his
15 trial counsel. Respondents have filed an opposition, contending that these submissions are not
16 adjudicative facts within the meaning of Federal Rule of Evidence 201. Docket. No. 32.

17       Rule 201(a) clearly states that the rule relates to the admission of adjudicative facts.
18 "Adjudicative facts," as defined by the notes following the rule "are simply the facts of the
19 particular case." Petitioner's submissions do not qualify as adjudicative facts because they do not
20 relate to the facts of the instant case, but to other cases. Accordingly, petitioner's requests to the
21 court to take judicial notice are DENIED.

## CONCLUSION

23       The court finds that petitioner has failed to show any violation of his federal constitutional
24 rights in the underlying state court proceedings. Accordingly, the petition for writ of habeas
25 corpus is DENIED. The clerk shall enter judgment and close the file.

26 **IT IS SO ORDERED.**
27 DATED:  5/9/08        _____
                                         RONALD M. WHYTE
28                                       United States District Judge

8